IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


J & J SPORTS PRODUCTIONS, INC.

            Plaintiff,

v.                                    CIVIL ACTION NO.  2:18-cv-00781

LORETTA GOOD, et al.,

            Defendants.


MEMORANDUM OPINION AND ORDER

## I.    Introduction

Pending before the court is a Request for Default Judgment [ECF No. 12] filed by Plaintiff J & J Sports Productions, Inc. For the reasons that follow, the Request is **GRANTED**. Damages are awarded in amounts set forth below.

## II.    Background

Plaintiff is a distributor of sports and entertainment programming to commercial establishments. Plaintiff filed its Complaint against Defendants Loretta Good, Jessica Good, and Loretta's Hangout, Inc. (collectively "Defendants"), complaining of Defendants' allegedly unauthorized and illegal receipt and exhibition of *"The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program* ("the Program") broadcasted on May 2, 2015. The

Complaint charges Defendants with violations of the Federal Communications Act of 1934, as amended. 47 U.S.C. §§ 553, 605.

Defendants were served with the Summons and Complaint on July 9, 2018. To date, Defendants have failed to appear or file a pleading responsive to Plaintiff's Complaint. The Clerk entered default against Defendants on August 15, 2018 [ECF No. 11]. Plaintiff then filed a Request for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).

### III.    Legal Standard

Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Under Rule 55, which governs default judgments, "trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). A defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as related to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court must make an independent determination of damages where the amount of the plaintiff's claim is uncertain. Fed. R. Civ. P. 55(b). Plaintiff has filed a declaration and two affidavits in support of its Request, setting forth the amount due and stating that Defendants are neither infants, incompetents, nor members of the United States

Military. Based on its review of Plaintiff's Request for Default Judgment, affidavits, and declaration, the court finds that a hearing on this matter is unnecessary.

## IV. Discussion

Plaintiff has alleged violations of both 47 U.S.C. § 553 and 47 U.S.C. § 605. However, when a defendant is liable under both § 553 and § 605, an injured plaintiff can only recover damages under one section. *See Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp. 2d 702, 704 (E.D.N.C. 2011). Here, Plaintiff elects to pursue damages under only § 605. The court will consider whether Plaintiff has pleaded facts giving rise to liability under § 605 before resolving the question of damages.

### a. Liability

Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ." 47 U.S.C. § 605(a). The statute continues: "Any person aggrieved by any violation of subsection (a) or paragraph (4) of this subsection may bring a civil action in a United States district court." § 605(e)(3). The "intercepted communications" referenced in the statute include satellite transmissions. *See* § 605(d)(6) (defining "any person aggrieved" as a person who maintains "proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming"); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*,

253 F.3d 900, 914 (6th Cir. 2001) (concluding after discussion of the relevant legislative history that "Congress intended to bring cable and satellite communications under the protection of [the Communications] Act").

Plaintiff has alleged facts that, when accepted as true, support liability under § 605. Plaintiff alleges, inter alia, that it entered into an agreement with the promoter of the Program, which provided Plaintiff with the exclusive right to license the exhibition of the Program to commercial establishments. Compl. ¶ 19. Plaintiff alleges that Defendants Loretta Good and Jessica Good are owners or operators of Defendant Loretta's Hangout, Inc. ("Loretta's Hangout"), a commercial establishment located in South Charleston, West Virginia. *Id.* ¶¶ 6–12, 17. Plaintiff alleges further that on May 2, 2015, without authorization, Defendants intercepted, received, published, and broadcasted the satellite transmission of the Program to patrons, with "full knowledge" that the Program was not to be intercepted, received, published, or displayed. *Id.* ¶ 22.

Plaintiff provides the affidavit of its auditor, who was present at Loretta's Hangout on May 2, 2015 and who testifies that he observed Defendants airing the Program on two televisions. Aff. of Jonathon Vandale [ECF No. 12-2]. The auditor also testifies that fifteen persons were present inside Loretta's Hangout at the time the program was broadcasted. *Id.* Plaintiff adds that there are several illegal methods of accessing the Program, though it is unclear which method Defendants employed. Aff. of Joseph Gagliardi, President, at ¶ 9 [ECF No. 12-1]. Nonetheless, Plaintiff avers

4

that its programming cannot be mistakenly, innocently, or accidentally intercepted. *Id.*

Plaintiff's allegations establish liability against Loretta's Hangout and Loretta and Jessica Good, individually, because Loretta and Jessica Good had the right and ability to supervise the activities of Loretta's Hangout and had a direct financial interest in the activities of Loretta's Hangout. Compl. ¶¶ 9–15; *see Joe Hand Promotions, Inc. v. Nichols*, No. 2:14-cv-28727, 2017 WL 3216539, at \*2 (S.D. W. Va. July 28, 2017) (finding the defendant individually liable where the defendant had supervisory capacity and control over the activities at the establishment occurring the night of the broadcast and "received a financial benefit therefrom"); *Joe Hand Promotions, Inc. v. Phillips*, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at \*3 (S.D.N.Y. July 16, 2007) (finding vicarious liability applies where the defendant "had a 'right and ability to supervise' the violations, and that he had a strong financial interest in such activities"). Thus, Loretta Good and Jessica Good may be held jointly and severally liable along with Loretta's Hangout for the § 605 violation.

### b. Damages

An aggrieved plaintiff may recover between $1,000 and $10,000 in statutory damages for each violation of § 605(a), "as the court considers just." § 605(e)(3)(C)(i)(II). The statute also provides enhanced damages in the court's discretion of up to $100,000 per violation for those who violate its provisions

"willfully" with the purpose of obtaining a commercial advantage or private financial gain. § 605(e)(3)(C)(ii).

First, Plaintiff requests $5,000 in statutory damages, contending that actual damages are difficult to prove. Plaintiff, however, has provided some evidence to guide the court's calculation of Plaintiff's statutory damages. Plaintiff asserts that fifteen patrons were present at Loretta's Hangout during the airing of the Program. Further, Plaintiff calculates rates for its sublicensing contracts based on maximum occupancy, as noted by the "rate card" attached to Plaintiff's Request for Default Judgment. For an establishment the size of Loretta's Hangout, Plaintiff would charge $3,000 for the right to display the Program. Rate Card [ECF No. 12-1].

District courts in the Fourth Circuit employ various methods in determining statutory damages under § 605. *See Nichols*, 2017 WL 3216539, at *3. Some courts award a flat amount equal to the unpaid sublicense fee. *See, e.g.*, *J & J Sports Prods., Inc. v. Lara Sport House Corp.*, No. l:10–cv–01369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding $2,200, the licensing fee based on establishment's capacity). A second approach is to use a per-patron rate. *See, e.g.*, *Joe Hand Promotions, Inc. v. Lawhon*, No. 1:14cv459, 2016 WL 160730, at *2 (M.D.N.C. Jan. 13, 2016) (applying rate of $100 for twelve patrons for a total of $1,200). Other courts award a flat sum per violation. *See, e.g.*, *J & J Sports Prods., Inc. v. J.R. 'Z Neighborhood Sports Grille*, No. 2:09–03141–DCN–RSC, 2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010) ($5000);

*Joe Hand Promotions, Inc. v. Angry Ales, Inc.*, No. 3:06cv73, 2007 WL 3226451, at *5 (W.D.N.C. Oct. 29, 2007) ($1000).

In this case, the court employs a combination of the abovementioned methods in finding that an award of $4,500 is just compensation for Defendants' violation of the statute. This includes Plaintiff's lost sublicense fee ($3,000) plus a $100 charge per-patron present at Loretta's Hangout during the broadcast ($1,500). In calculating statutory damages, the court is mindful that Plaintiff's primary source of revenue is sublicensing fees. *See* Pl.'s Mem. Points and Authorities [ECF No. 13] 6–7. The court is also aware of the widespread problem of piracy and recognizes that illegal broadcasts of Plaintiff's programs erode Plaintiff's customer base. *See id.* Moreover, piracy is costly to enforce: Here, Plaintiff had to send an auditor to Loretta's Hangout to see if the Program would be unlawfully broadcast. For these reasons, an award of only the $3,000 sublicense fee is insufficient. The court finds statutory damages in the amount of $4,500 is just compensation for Plaintiff's losses and will deter Defendants from engaging in future piracy.

Upon finding that Defendants' violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain," the Court, in its discretion, may also award enhanced penalties of up to $100,000. § 605(e)(3)(C)(ii). Here, Plaintiff seeks enhanced damages of $20,000. By virtue of default, Defendants have admitted that the illegal broadcast of the Program was willful and committed for direct or indirect commercial advantage or private financial gain. Even absent

Defendants' admissions, however, courts have held that the interception of an encrypted program for broadcast in a commercial establishment that is open to the public is willful and for financial advantage. *See, e.g., Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Despite finding Defendants' violation as willful and for commercial advantage, the court finds an enhanced penalty inappropriate in this case. In determining additional damages, other courts have considered factors such as: "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 668 (E.D. Va. 2013) (quoting *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02 CIV. 7972 (SHS), 2003 WL 548891, at *1 (S.D.N.Y. Feb. 24, 2003)). The court finds no aggravating factors that would warrant an enhanced damages award, and none of the foregoing factors weigh in Plaintiff's favor. Accordingly, the court awards no enhanced penalties under § 605(e)(3)(C)(ii).

Plaintiff also requests attorneys' fees in the amount of $1,500 and costs in the amount of $621.28 pursuant to § 605(e)(3)(B)(iii). The court has examined Plaintiff's

request for attorneys' fees and costs and finds it to be reasonable. Thus, Plaintiff's judgment shall include an award of attorneys' fees in the amount of $1,500 and costs in the amount of $621.28.

## V.    Conclusion

For the foregoing reasons, the court **GRANTS** Plaintiff's Request for Default Judgment [ECF No. 12]. Plaintiff is awarded judgment against all Defendants, jointly and severally, in the amount of $4,500 in statutory damages in addition to $1,500 in attorneys' fees and $621.28 in costs, for a total judgment of $6,621.28.

The court hereby **DISMISSES** this case and **DIRECTS** that it be removed from the court's active docket. A separate Judgment Order follows.

The court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to counsel of record, any unrepresented party, and to Defendants.

ENTER:        December 6, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE